George C. Metzger and Whittemore Dodd, Copartners Doing Business under the Firm Name and Style of Metzger-Dodd Company, Respondents, *v.* The Coe-Stapley Manufacturing Corporation, Appellant.

First Department, March 4, 1921.

Principal and agent — action to recover commissions for procuring government contract subject to cancellation in whole or in part by government — admissibility of parol evidence — requested instruction improperly refused — parol evidence to establish elements of contract admissible where letter only supplementary to oral contract.

Where in an action to recover commissions under an oral agreement to procure government contracts which the government reserved the right to cancel in whole or in part, it appears that the agreement between the plaintiffs and the defendant was confirmed by a letter from the defendant but that there was no statement therein as to whether the commissions were to be based on the contract price or on the money received from goods actually delivered to the government, which was the principal issue litigated, it was error for the court to refuse defendant's offer to prove by parol evidence that the commissions were to be paid on the goods actually delivered.

It was also error to refuse defendant's request to instruct the jury that the oral testimony offered might be considered in connection with the letter.

Where a letter actually on its face purports to be a written agreement, but in fact is only supplementary to an oral contract, parol evidence is admissible to determine what the contract was, since it is not offered to vary a written agreement.

APPEAL by the defendant, The Coe-Stapley Manufacturing Corporation, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 8th day of April, 1920, upon the verdict of a jury for $9,570.28, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*Thomas H. Wight*, for the appellant.

*George B. Hayes*, for the respondents.

GREENBAUM, J.:

In view of the conclusion which we have reached it will be unnecessary to summarize the voluminous testimony adduced upon the trial and discussed in the briefs of counsel. The amended complaint in effect alleges that on or about the 25th day of May, 1918, plaintiffs, as copartners, entered into an agreement with the defendant corporation under which the plaintiffs were employed to render services to the defendant as its agents in negotiating with the United States government for the purchase from the defendant of certain articles known as thong cases. A thong is an accessory used in cleaning rifles; a thong case is a brass tube which holds the thong and also a rifle oiler. Thong tips and thong bodies are separate parts of the thong. The complaint alleges that under the agreement plaintiffs were to receive two and one-half per cent of the contract price of all of the goods which the United States government would agree to purchase from the defendant. It is further alleged that through efforts of the plaintiffs contracts were secured from the United States government in behalf of the defendant at the aggregate price of $345,700 and that by reason thereof plaintiffs became entitled to the sum of $8,642.50. Defendant denies the allegations of the complaint as to the terms of the agreement but does not deny the making of a

contract with the United States government.    There are also
defenses setting up the illegality of the plaintiffs' agreement.
One of the important issues litigated between the parties was
whether the two and one-half per cent commission was to be
based upon the full contract price of the goods as ordered by
the government, regardless of cancellations, or upon the
actual amount of the goods which were delivered to and
accepted by the government.    The contract gives the govern-
ment the right to cancel any portion of the order, and the
defendant asserts that as matter of fact but a small portion of
the original order was filled due to the government's exercise
of its right of cancellation.

Plaintiffs in their bill of particulars dated July 23, 1919,
alleged that the agreement set forth in the " fourth " para-
graph of the complaint was an oral one under which the
defendant agreed to pay to the plaintiffs a sum equal to
" 2½% of the contract price of said articles as specified in
any contract entered into between the defendant and the
said Government and procured by defendant through the
services of the plaintiffs.    *    *    *    After said oral agreement
had been entered into and after plaintiffs had entered upon
the performance of said agreement the defendant confirmed
said agreement by a letter in writing dated May 25, 1918,
which letter reads as follows:

" ' WASHINGTON, D. C.
" ' *May* 25, 1918.
" ' METZGER-DODD Co.,
    " ' 101 Park Ave., New York:
" ' GENTLEMEN.— In the matter of Government contracts
covering thong cases and thongs and screw hooks and thumb
nuts on which we are bidding and which were brought to us
by you, it is understood and agreed that if successful in secur-
ing Government contracts on either of these articles we agree
to pay you a commission of 2½%.
" ' COE-STAPLEY MFG. CORP.
    " ' (Signed)      E. B. SHOEMAKER,
            " ' *Vice-Pres.*' "

It is also alleged in the bill of particulars that said agree-
ment " between plaintiffs and defendant was made at the
City of New York,    *    *    *    and was made between on or

about May 13th, 1918, and on or about May 17th, 1918, both dates inclusive, plaintiffs having negotiated and having held a number of conferences with the defendant in connection with said agreement between such dates and same having been consummated and adopted between such dates."

It will thus be seen that plaintiffs expressly admit that the agreement between the parties was made prior to May 25, 1918, and that the letter of that date was merely written as a confirmation of the general understanding of the parties as to the compensation at the rate of two and one-half per cent. In other words, the agreement was really oral or, at most, partly oral and partly written.

During the trial Mr. Dodd, one of the plaintiffs, was asked upon cross-examination whether Mr. Shoemaker, the vice-president of the defendant, had not said to him that the defendant " would not stand for any commission except on the basis of the money that they received; that they would pay you two and a half per cent only on the goods that were shipped and paid for by the Government?  Mr. Hayes: Objected to. The agreement speaks for itself.  The Court: Was that preceding the signing of this paper?  [Referring to the May 25th letter, Exhibit 2.]  Mr. Hayes: Yes, I say that is all merged in the agreement.  The Court: Objection sustained.  Mr. Wing: We ask leave, if your Honor please, to show all of the conversation which occurred.  The Court: Put your question and then I will rule.  Mr. Wing: Your Honor will grant me an exception to your ruling on the question."

Defendant's counsel then asked the following question: " Well, is it not a fact, Mr. Dodd, that on the occasion when this Exhibit 2 was written, that both before and after the contract, Mr. E. B. Shoemaker said to you that these commissions which you were to receive in connection with the contract were to be paid only when the defendant received its money from the government?  Mr. Hayes: Objected to on the same ground.  The Court: The same ruling.  Mr. Wing: Exception."

Other questions of like import but varied in form were asked, all of which were objected to by counsel for the plaintiff.  The objections were sustained, and defendant excepted. It is to be noted in this connection that although the trial

court excluded the proffered testimony to which reference had just been made there was nevertheless considerable evidence on the part of the defendant which had been admitted to the effect that the commissions were to be limited to the moneys received from the government on its contract with defendant.

On the defendant's case a witness named Merwin was called. After having testified that he was treasurer of the defendant company and acquainted with the contracts in suit he stated that about one-quarter of the government's contract was completed. He was asked: " Have you any figures with you from which you can state the exact dates of the delivery of the merchandise under that contract and the dates of payment? A. Yes, sir. Mr. Hayes: Objected to as immaterial. The Court: Why not dispose of that question now and save time as to that defense? Mr. Hayes: I am quite willing, if your Honor please, to dispose of it now. The Court: As I understand it, the point is simply this: You claim that under this contract you are entitled to $2\frac{1}{2}\%$ on every contract that was awarded by the Government to the defendant, immaterial as to whether any part of it had been carried out by the defendant. Mr. Hayes: Exactly, sir. The Court: Upon that, Mr. Wing, I will hear you."

Colloquy then ensued between the court and defendant's counsel, Mr. Wing, who stated that he desired to show by the witness that the agreement made was that two and one-half per cent was only to be paid upon the amounts received from the government by defendant under the contract. Attention was also called to the cancellation clause of the government's contract. The court finally ended the discussion by the following statement: " Then your party should have inserted that in the contract. The probabilities are that if they had retained counsel to draw this contract instead of drawing it themselves that would have been inserted. In reference to the case of *Mullen* v. *Washburn* [224 N. Y. 413, 421], cited by counsel for the defendant, the court simply held that which is elementary, that parol evidence may be offered where there is doubt as to the meaning of a contract, and for that purpose only. The stenographer will read the question. (Question read.) The Court: The objection is sustained on the ground that it is

immaterial, irrelevant and is not a part of the issues in this case. Mr. Wing: Exception."

After the learned trial justice had completed his charge to the jury, the defendant's counsel requested the court to charge as follows: " May I ask you to charge the jury that they may take into account the oral testimony given here, coupled with this letter of May 25th, and may determine from all of the circumstances what the contract was, whether it applied to the full face of the contract or whether it was to be a commission of 2½% only on the money paid by the Government to the defendant, when and as they were paid." The court refused to charge as requested and defendant's counsel duly excepted.

This request was evidently made despite the exclusion of certain testimony tendered in behalf of the defendant tending to substantiate its claim that commissions were to be limited upon the sums paid by the government under its contract, since there was, as previously stated, testimony admitted in the case to that effect. The request was consistent with defendant's position throughout the trial and the defendant very properly sought to have the record show the theory upon which the court submitted the case to the jury.

The position of the learned trial justice undoubtedly was that the letter of May twenty-fifth in itself embodied the complete agreement between the parties. In thus holding, the learned justice erred. The letter does not state upon what the two and one-half per cent commission was to be computed, whether upon the gross amount of the contract price, or upon the goods actually accepted by the government and paid for. Such an omission in the letter is peculiarly significant in view of the fact that the contract provided that it may be canceled by the government at any time. The letter of May twenty-fifth is also silent as to when the commission was to be paid, whether on the signing of the contract or at any other time. Besides, the plaintiffs admitted in their bill of particulars as well as in their testimony that the agreement was an oral one. The evidence which the defendant desired to offer did not tend to vary the terms of a written agreement. The letter, Exhibit 2, was supplementary to the oral contract. It is unnecessary to cite many authorities upon the proposition that upon the facts appearing in the record before us the learned court erred

in excluding the testimony referred to and in refusing to charge as requested. The law applicable to this case is discussed in *Di Menna* v. *Cooper & Evans Co.* (220 N. Y. 391, 397).

The judgment and order must be reversed and a new trial ordered, with costs to appellant to abide event.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.